UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CALVIN AYRE,   CASE NO.:

          Plaintiff,

vs.

DOES 1-9,

          Defendants.
_____/

## COMPLAINT

Plaintiff, Calvin Ayre ("Ayre" or "Plaintiff"), sues Defendants, Does 1 through 9 (collectively, "Defendants"), and alleges:

### NATURE OF THE ACTION

1. This is an action for injunctive relief and damages arising out of Defendants' malicious and unlawful actions, including upon information and belief, defamation and conspiracy. Defendants, whose identities are presently unknown, and who have engaged in an intentional scheme to conceal their identity, are believed to have authored, commissioned the publication of, or have directly published, numerous knowingly false statements regarding Plaintiff. The person or persons responsible for publishing the false statements on the website located at casinopulsepro.com, betindex.bet and various other sites have refused to remove or correct the publications containing defamatory statements, while continuing efforts to conceal their identities. Plaintiff believes that Defendants have engaged in such conduct in an organized and coordinated fashion in order to cause harm to Plaintiff's personal and professional reputation.

## THE PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a citizen of Canada and Antigua who currently resides in Antigua and Barbuda.

3. Defendants are the individuals or entities responsible for authoring, commissioning and/or publishing the false and defamatory statements at issue in this action appearing on betindex.bet, casinopulsepro.com and various other sites.

4. Defendants' true names and capacity, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff. Upon information and belief, one or more of the Defendants are citizens of the United States and/or are utilizing entities in the United States to publish defamatory statements from servers in the United States. For instance, the websites associated with casinopulsepro.com and betindex.bet appear to be utilizing Cloudflare's web hosting services in the United States to host the websites publishing false and defamatory statements.

5. Once Plaintiff discovers the true names of, capacity, and activities attributable to each of the Defendants, Plaintiff will amend this Complaint to include such detail.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because, upon information and belief, there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000, USD.

7. This Court has personal jurisdiction over Defendants pursuant to pursuant to Fla. Stat. §48.193(1)(a)(2) because, upon information and belief, they have committed tortious acts within Florida.

8. Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

9. Plaintiff is a successful entrepreneur and businessman, who has launched numerous successful and reputable companies.

10. Plaintiff is highly respected throughout the world, including in Antigua and Barbuda where he currently resides, as both a businessman and philanthropist. Antigua and Barbuda have recognized Plaintiff's experience and business acumen, naming him a Special Economic Envoy for Antigua and Barbuda and regularly seeking his advice on financial matters and blockchain technology.

11. Commencing in or about December 2024, and continuing through the present, Plaintiff has been the victim of a vicious cyber-defamation campaign.

12. Upon information and belief, Defendants set out to intentionally defame and damage Plaintiff's personal and professional reputation. To that end, upon information and belief, Defendants authored, commissioned and/or published a series of articles containing false and defamatory statements regarding Plaintiff (collectively, the "Defamatory Articles").

13. The Defamatory Articles are published without any reference to an author or individual responsible for the content presented.

14. The Defamatory Articles contain numerous false and defamatory statements portraying Plaintiff as being associated with and/or responsible for an online betting operation called Bovada. The publications also suggest, inter alia, that Plaintiff is responsible for designing the software that Bovada uses, that Bovada was originally Bodog, and/or that Bovada is Bodog rebranded.

15. It does not help that Bovada has received numerous negative reviews. For example, one former Bovada customer wrote on reddit "I have played Bovada A LOT. It is definitely rigged…. [T]hey rip off so many people with the gaming…." Another former customer wrote "STAY AWAY FROM BOVADA!!! I requested a $5700 withdrawal via Bitcoin on 12/30/24 but woke up today 12/31/24 with an email from 'investigations' saying my withdrawal was denied because I had an old account from 2015. They are now disabling my current account and seizing the funds." Still, another wrote "[s]cam site don't trust it…."

16. The misinformation campaign associated the Plaintiff with Bovada has already resulted in actual harm to Plaintiff's personal and professional reputation. In the latter half of 2023, Plaintiff was named as a defendant in a class action lawsuit styled *Billie Jo Woods v. Morris Mohawk Gaming Group, et al.,* U.S. District Court for the Eastern District of Kentucky, Case No. 3:23-cv-00053-GFVT (the "Bovada Litigation"). Plaintiff was named as a defendant in the Bovada Litigation based upon the false claim that Plaintiff is owner of Bodog, and that Bovada is one of the Bodog sites operating in, *inter alia,* Kentucky. Such allegations, predicated upon misinformation published and disseminated by Defendants, are false.

17. While Plaintiff was associated with Bodog Entertain Group S.A. ("Bodog") at one time, in 2007, Bodog divested itself of its online gaming business, and in 2008, Plaintiff stepped down as Bodog's CEO. Upon information and belief, several years later, in 2011, the Canadian-based group generally known as Morris Mohawk Gaming Group ("MMGG") launched Bovada. Bovada is not a rebranding or continuation of Bodog, and Plaintiff has never had anything to do with Bovada or its online gaming business.

18. Following the commencement of the Bovada Litigation, Plaintiff started making an effort to eliminate false publications associated him with Bovada.

4

19. The Defamatory Articles include, but are not limited to, the following:

   a. On or about December 11, 2024, Defendants published an article entitled "Who Owns Bovada?" on casinopulsepro.com (which appears at the URL https://casinopulsepro.com/who-owns-bovada/#The_Bodog_Connection). The article falsely claims that "Bovada was actually born out of the well-established Bodog brand, which was founded by Canadian entrepreneur [Plaintiff] in the late 1990s…. However, due to legal issues in the United States, Bodog had to rebrand itself and separate its operations.  This led to the birth of Bovada in 2011…."

   b. On or about February 21, 2025, Defendants published an article entitled "Bovada" on betindex.bet (which appears at the URL https://betindex.bet/bovada/) falsely claiming that Bovada's "parent company [is] Bodog" and that the "original sports betting platform of Bovada was actually on the bodog.com domain, and it was exclusively designed by the owner[, Plaintiff]…."

20. Upon information and belief, the false and defamatory statements in the Defamatory Articles were made with the intent to injure Plaintiff by damaging his personal and professional reputation and were made with knowledge that the statements were false or in reckless disregard of whether or not they were false.  At the very least, these statements were intended to tarnish Plaintiff's reputation by falsely associating him with Bovada.

21. Thanks to publications like the Defamatory Articles, false statements regarding Plaintiff's purported association with Bovada are still creating problems for Plaintiff.  Indeed, the same false statements were repeated in an Order rendered in the Bovada Litigation on December 2, 2025.

22. Plaintiff attempted to contact the person(s) responsible for publishing the Defamatory Articles. However, the publisher's domain names have been registered in such a way to conceal the true identity of the registrants of the domain name.

### COUNT I
*Defamation*

23. Plaintiff restates the allegations in Paragraph 1 through 22 above as if fully set forth herein.

24. Commencing in or about December 2024, Defendants have undertaken a course of conduct calculated to damage Plaintiff's personal and professional reputation.

25. Specifically, Defendants published false and defamatory statements regarding Plaintiff in the Defamatory Articles.

26. The statements that Defendants published concerning Plaintiff in the Defamatory Articles are false and were false when made.

27. Such statements were made negligently, maliciously, with the wrongful and willful intent of injuring Plaintiff's personal and professional reputation, and with the knowledge that the statements were false or in reckless disregard of whether or not they were false.

28. The published statements in the Defamatory Articles were made of and concerning Plaintiff and were so understood by those who read Defendants' publication of them.

29. Defendants knew or should have known that the statements were injurious to Plaintiff's personal and professional reputation.

30. Defendants' defamation of Plaintiff have caused, and unless enjoined will continue to cause, Plaintiff to suffer irreparable harm for which he has no adequate remedy at law.

31. As a direct and proximate result of these false statements, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, serious injury to his reputation, both personal and professional.

### COUNT II
*Conspiracy*

32. Plaintiff restates the allegations set forth in Paragraph 1 through 22 as if fully set forth herein.

33. Upon information and belief, Defendants had a common purpose and goal of unlawfully authoring, commissioning, publishing, promoting, and/or distributing false and defamatory statements of and concerning Plaintiff.

34. In furtherance of that goal, Defendants took overt acts in furtherance of their common goals and purposes, including the coordinated publication of numerous online articles, including the Defamatory Articles, containing false and defamatory statements regarding Plaintiff.

35. Defendants knew or should have known that the false statements about Plaintiff in the Defamatory Articles were false.

36. Defendants' conspiracy to defame Plaintiff have caused, and unless enjoined will continue to cause, Plaintiff to suffer irreparable harm for which he has no adequate remedy at law.

37. Defendants' actions have also caused Plaintiff to suffer damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants as follows:

   A. Awarding Plaintiff compensatory, special, and punitive damages, in amounts to be proven at trial, plus pre-judgment and post-judgment interest;

7

B. Awarding Plaintiff its costs associated with this action;

C. Granting Plaintiff injunctive relief requiring, *inter alia,* that Defendants withdraw the defamatory statements regarding Plaintiff, to publish retractions, and prohibiting Defendants from publishing or republishing false and defamatory statements regarding Plaintiff in the future; and

D. Such other and further relief as the Court deems appropriate.

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Samuel A. Lewis
Samuel A. Lewis / Fla. Bar No. 55360
Email: slewis@cozen.com
COZEN O'CONNOR
Southeast Financial Center, 30th Floor
200 South Biscayne Blvd.
Miami, Florida 33131
Tel: 305-397-0799

*Counsel for Plaintiff*